ACE Property & Casualty Insurance Company *vs.*
Commissioner of Revenue.

Suffolk. December 3, 2001. - June 28, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Federal Preemption. Statute,* Federal preemption. *Taxation. Insurance,*
Premiums.

This court concluded that a taxpayer's action seeking a declaration that the
Federal Crop Insurance Act, 7 U.S.C. §§ 1501 et seq., preempts G. L.
c. 63, § 23, with respect to any tax imposed on premiums for crop insur-
ance policies that are reinsured by the Federal Crop Insurance Corporation
could be pursued prior to resolution of the taxpayer's pending appeal
before the Appellate Tax Board, where the question raised by the action af-
fected other taxpayers, where the facts were not in dispute, and where the
issue was purely a matter of law. [242-244]

Discussion of the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 et seq., and
accompanying regulations conferring on the Federal Crop Insurance
Corporation (FCIC) the power to preempt State law with respect to any tax
imposed on premiums for crop insurance policies that are issued by or re-
insured by the FCIC. [244-246]

This court concluded that the Federal Crop Insurance Act, 7 U.S.C. §§ 1501
et seq., preempts G. L. c. 63, § 23, with respect to any tax imposed on
premiums for crop insurance policies that are reinsured by the Federal
Crop Insurance Corporation. [246-251]

Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on August 11, 2000.

The case was reported by *Greaney,* J.

*John S. Brown* for the taxpayer.

*Thomas A. Barnico,* Assistant Attorney General, for Commis-
sioner of Revenue.

Sosman, J. The plaintiff, ACE Property & Casualty Insurance
Company (ACE), brought the present action seeking a declara-
tion that the Federal Crop Insurance Act, 7 U.S.C. §§ 1501
et seq. (2000) (Act), preempts G. L. c. 63, § 23, with respect to
any tax imposed on premiums for crop insurance policies that
are reinsured by the Federal Crop Insurance Corporation (FCIC).

ACE's complaint for declaratory relief against the Commissioner of Revenue (commissioner) was filed in the county court, where a single justice reserved and reported the case to the full court on a statement of agreed facts. We conclude that the tax imposed by G. L. c. 63, § 23, on premiums for policies reinsured by the FCIC is preempted by the Act, and therefore remand the case to the county court for entry of a judgment in favor of ACE.

1. *Facts*. ACE is a Pennsylvania corporation with its principal place of business in Philadelphia. As a foreign insurance company, ACE is subject to the tax imposed by G. L. c. 63, § 23, on premiums for policies insuring property or interests located in the Commonwealth.[1] ACE's customers include various cranberry growers located in Massachusetts, to whom ACE has issued multiple peril crop insurance policies. Those crop insurance policies are reinsured by the FCIC.

Believing that premiums on FCIC-reinsured policies are exempt from State taxation under the Act, see 7 U.S.C. § 1511, ACE did not include those premiums on its premium excise return for 1995. The commissioner audited ACE's 1995 excise return and issued an assessment based on the crop insurance premiums that ACE had excluded from its return. ACE filed an application for abatement and, after the commissioner denied such application, ACE appealed to the Appellate Tax Board (board). While that appeal was pending, ACE commenced the present action for declaratory relief in the county court.[2]

2. *Exhaustion of administrative remedies*. Although the commissioner has not raised the issue (see note 2, *supra*), we first

---

[1]General Laws c. 63, § 23, provides in pertinent part:

"Every foreign insurance company . . . shall annually pay an excise upon the gross premiums for all policies written or renewed, all additional premiums charged, and all assessments made during the preceding calendar year for insurance of property or interests in this commonwealth . . . at the rate of two per cent but not less in amount than would be imposed by the laws of the state or country under which such company is organized upon a like insurance company incorporated in this commonwealth . . . ."

[2]The commissioner agreed that a declaratory judgment action was an appropriate way to resolve the underlying preemption issue. By agreement, all

address whether this action for declaratory relief may be pursued prior to resolution of the pending appeal before the board. Ordinarily, parties must first exhaust all administrative remedies before seeking judicial relief. See *New England Legal Found.* v. *Boston*, 423 Mass. 602, 607 (1996); *Space Bldg. Corp.* v. *Commissioner of Revenue*, 413 Mass. 445, 448 (1992), and cases cited. "Nevertheless, '[w]e have held repeatedly, in the tax field, that a declaratory action is not ousted merely by the fact that the taxpayer has an administrative path to relief. Rather we have taken the view that the judge in such a case may still exercise a discretion as to whether the action should be entertained.' " *Id.*, quoting *Sydney* v. *Commissioner of Corps. & Taxation*, 371 Mass. 289, 293 (1976). While there is no "comprehensive formula . . . governing the exercise of discretion," *Sydney* v. *Commissioner of Corps. & Taxation, supra* at 294, "exceptions to the [exhaustion] rule occur most often when important, novel, or recurrent issues are at stake, when the decision has public significance, or when the case reduces to a question of law." *Space Bldg. Corp.* v. *Commissioner of Revenue, supra.* See *S.J. Groves & Sons* v. *State Tax Comm'n*, 372 Mass. 140, 142-143 (1977) (because declaratory action "reduces to an issue of law without dispute as to the facts," and "raises an issue of first impression which may well affect the interests of others than the taxpayer here," there was no abuse of discretion in entertaining action).

Here, the commissioner agrees that the preemption question raised by this case affects other taxpayers, who are asserting the identical preemption argument in applications for abatement and appeals to the board. Absent a judicial determination that the tax is preempted, the commissioner intends to enforce the tax against all insurers whose crop insurance policies are reinsured by the FCIC. The facts are not in dispute, and the issue is purely a matter of law. As such, we conclude that this case comes within that "narrow set of circumstances" that makes a declaratory judgment action appropriate despite the failure to exhaust administrative remedies, *New England Legal Found.* v. *Boston, supra* at 607 n.5, and we exercise our discretion to

---

proceedings before the board have been stayed pending resolution of this action.

entertain this action and resolve the underlying legal issue on the merits.

3. *Statutory and regulatory background.* The Act, which dates back to 1938, seeks "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502(a). The FCIC, a Federal corporation comprising an agency within the Department of Agriculture, is charged with implementing the Federal crop insurance program. See 7 U.S.C. § 1503. The FCIC provides some crop insurance directly, entering into insurance contracts with agricultural producers. See 7 U.S.C. § 1508(a). More commonly, however, it provides reinsurance for crop insurance policies issued to producers by private insurance companies. See 7 U.S.C. § 1508(k)(1) (FCIC "shall, to the maximum extent practicable, provide reinsurance to insurers approved by the [FCIC] that insure producers of any agricultural commodity"). Pursuant to its reinsurance agreements, the FCIC reimburses the private insurance companies for operating and administrative costs incurred in connection with the reinsured policies. See 7 U.S.C. § 1508(h)(5)(A)(ii) and (k)(4).

From the inception of the crop insurance program, Congress exempted the FCIC from all taxation "imposed by the United States or by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority." 7 U.S.C. § 1511, as appearing in c. 30, Title V, § 511, 52 Stat. 75 (1938). The Act also contains a general preemption provision, expressly conferring on the FCIC the power to preempt State law: "State and local laws or rules shall not apply to contracts, agreements, or regulations of the [FCIC] or the parties thereto *to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply*, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations" (emphasis added). 7 U.S.C. § 1506(*l*). The FCIC is also authorized to issue regulations "as are necessary to carry out [the Act]." 7 U.S.C. § 1506(p).

Despite the express tax preemption in 7 U.S.C. § 1511, the FCIC found that, as of 1990, "many States have been asserting

the right to tax premiums on the reinsured policies under various State taxing statutes." 55 Fed. Reg. 23,066 (1990). The FCIC noted that, through its reimbursement of private insurance companies' expenses, it had effectively paid over $15 million in State premium taxes in the previous year alone. *Id.* Because the FCIC was exempt from taxation under 7 U.S.C. § 1511, the agency concluded that those State taxes "should not have been assessed." *Id.* To remedy what it perceived to be inappropriate taxation on the policies that it reinsured (along with other provisions of State law that had impeded the crop insurance program in other respects), the FCIC promulgated regulations specifying the preemption of a variety of State laws, including tax laws. See 7 C.F.R. §§ 400.351 - 400.352 (2002).

The regulations, issued in 1990, first set forth a broad statement of preemption: "No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the [FCIC]." 7 C.F.R. § 400.352(a).[3] Next, the regulations provide "a non-inclusive list" of State actions that are expressly prohibited. 7 C.F.R. § 400.352(b). One of the things a State may not do is "[t]ax premiums associated with policies issued [under the Act]." 7 C.F.R. § 400.352(b)(2).[4]

Shortly after the 1990 regulations became effective, the State of Kansas challenged their validity, claiming that the FCIC had exceeded its statutory authority. See *State ex rel. Todd* v. *United States*, 791 F. Supp. 1491, 1496 (D. Kan. 1992), aff'd, 995 F.2d 1505 (10th Cir. 1993). Kansas conceded that it could not tax policies issued directly by the FCIC, but argued that the FCIC

---

[3]The breadth of the term "agreements, contracts, or actions authorized by this part," 7 C.F.R. § 400.352(a), is specified in 7 C.F.R. § 400.351, which makes the regulations applicable "to all policies of insurance, insured or reinsured by the [FCIC], contracts, agreements, or actions authorized by the Act and entered into or issued by FCIC."

[4]In 2001, the FCIC issued further regulations, amending the procedures for the submission of policies or plans of insurance for FCIC reinsurance approval. See 66 Fed. Reg. 47,949 (2001). Those regulations similarly provide that "[a] policy or plan of insurance that is approved by the Board for FCIC reinsurance is preempted from state and local taxation." 7 C.F.R. § 400.710 (2002).

could not validly preempt taxation of premiums on private policies that were only reinsured by the FCIC. See *id.* at 1497 n.7. Summary judgment was granted in favor of the defendants, holding that the FCIC had the authority to promulgate the preemption regulations, and the United States Court of Appeals for the Tenth Circuit affirmed that judgment. See *State ex rel. Todd* v. *United States*, 995 F.2d 1505, 1509 (10th Cir. 1993) (*Todd*). The *Todd* court found "no rational explanation, based on the statutory scheme, for a distinction between FCIC reinsured policies and FCIC direct insurance policies permitting the state taxing and regulation of one while preempting the other." *Id.* at 1510. The court concluded that the FCIC was authorized to preempt State law with respect to reinsured contracts under former § 1506(k) (current § 1506[*l*]),[5] or, assuming in the alternative that Congress had not expressly authorized such preemption, that the FCIC's preemption regulations were "eminently reasonable" in light of the terms and purpose of the Act. *Id.* at 1510-1511.

The following year, Congress amended the Act, adding the following clause to the general taxation preemption provisions of § 1511: "A contract of insurance of the [FCIC], and a contract of insurance reinsured by the [FCIC], shall be exempt from taxation imposed by any State, municipality, or local taxing authority." 7 U.S.C. § 1511, as amended, Pub. L. 103-354, Title I, § 108, 108 Stat. 3197 (1994).

4. *Preemption analysis.* Under its plenary power to regulate interstate commerce, Congress can preempt State taxes that interfere with interstate commerce. *National Private Truck Council, Inc.* v. *Commissioner of Revenue*, 426 Mass. 324, 330 (1997), cert. denied, 523 U.S. 1137 (1998). "The critical question in any preemption analysis is always whether Congress intended that federal [law] supersede state law." *Archambault* v. *Archambault*, 407 Mass. 559, 565 (1990), quoting *Louisiana Pub. Serv. Comm'n* v. *FCC*, 476 U.S. 355, 369 (1986). "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Commonwealth* v. *College Pro Painters (U.S.) Ltd.*, 418 Mass. 726,

[5]Section 1506(k) was redesignated as § 1506(*l*) in 1994. See Pub. L. 103-354, Title I, § 104(1), 108 Stat. 3181 (1994).

728 (1994), quoting *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 138 (1990). See *Todd, supra* at 1509-1510 ("Preemption occurs when Congress expresses a clear intent to preempt in a federal statute . . . or when state law is an obstacle to the objectives and purpose of Congress"). When the field being preempted involves a State's traditional and sovereign interests, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Jones* v̇. *Rath Packing Co.*, 430 U.S. 519, 525 (1977), quoting *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). See *Apkin* v. *Treasurer & Receiver Gen.*, 401 Mass. 427, 431 (1988).[6]

The explicit language of § 1511, as amended, clearly evinces Congress's intent to preempt State taxation of policies reinsured by the FCIC. As the statute now reads, "[a] contract of insurance of the [FCIC], *and a contract of insurance reinsured by the [FCIC]*, shall be exempt from taxation imposed by any State, municipality, or local taxing authority" (emphasis added). 7 U.S.C. § 1511. Coming on the heels of the *Todd* decision, it is apparent that Congress intended this amendment of § 1511 to solidify the court's holding and foreclose further challenges to the FCIC's preemption regulations as they applied to the taxation of contracts reinsured under the crop insurance program. That the private contracts are exempt from taxation once they are reinsured by the FCIC is now expressly stated in the Act.[7]

Meanwhile, of course, the FCIC regulations remain in effect, and still operate to preclude State taxation of any premiums

---

[6]Because we are considering statutory and regulatory language that preempts State taxation, we view as irrelevant the commissioner's citation to precedent concerning Federal contractors' very limited constitutional immunity from State taxation. See *United States* v. *New Mexico*, 455 U.S. 720, 736-737 (1982), quoting *Department of Employment* v. *United States*, 385 U.S. 355, 359-360 (1966) (private contractors and agents of Federal government do not enjoy constitutional immunity from State taxation unless private entity is "virtually . . . an arm of the Government").

[7]This is consistent with the understanding of those charged with regulating insurance in the various States. The year after the amendments to § 1511, the general counsel of the National Association of Insurance Commissioners (NAIC) opined that the amendments "codified" *State ex rel. Todd* v. *United States*, 995 F.2d 1505, 1509 (10th Cir. 1993), and that "[a]ll taxation of the [FCIC's] contracts of insurance or any contract reinsured by the [FCIC] is preempted by this provision." Memorandum from Susan E. Martin, NAIC

"associated with policies" issued under the Act. 7 C.F.R. § 400.352(b)(2). The preemption regulation is applicable to "all policies of insurance, insured *or reinsured* by the [FCIC]" (emphasis added). 7 C.F.R. § 400.351. The FCIC's authority to issue such a regulation is expressly provided in 7 U.S.C. § 1506(*l*); the application of that preemption authority to the reinsurance component of the Federal crop insurance program was correctly analyzed and upheld in *Todd*;[8] and that authority is now bolstered further by the amendments to § 1511. There is no sound basis on which to dispute the FCIC's authority to promulgate the preemption provisions set forth in 7 C.F.R. § 400.352. "An agency's preemption regulations have no less preemptive effect than statutes." *Todd*, *supra* at 1509, citing *Fidelity Fed. Sav. & Loan Ass'n* v. *de la Cuesta*, 458 U.S. 141, 153 (1982). Thus, the tax at issue here today is preempted if it is preempted by *either* 7 U.S.C. § 1511, or 7 C.F.R. § 400.352(b)(2).

The commissioner argues that the preemption in 7 U.S.C. § 1511 extends only to the FCIC itself, not to private entities, and that the 1994 amendment to § 1511 merely "codifies the constitutional bar against certain forms of direct taxation of the FCIC and its property and obligations." This argument is contrary to the wording of § 1511, and ignores the history of the 1994 amendment to that section. The statute exempts from taxation not only the contracts of the FCIC, but also any "contract of insurance reinsured by the [FCIC]." 7 U.S.C. § 1511. Any underlying "contract of insurance" that the FCIC reinsures is, by definition, an insurance policy issued by an entity other than the FCIC. The States may tax those private entities, but they may not tax the insurance policies issued by those entities that the FCIC has reinsured. The commissioner's interpretation would also make the amendments to § 1511

General Counsel, to Members of the Crop Insurance Working Group (Mar. 9, 1995), 1995 Proceedings of the NAIC, First Quarter, at 667.

[8]Although we are not bound by decisions of Federal courts (other than the United States Supreme Court) on matters of Federal law, see *Commonwealth* v. *Montanez*, 388 Mass. 603, 604 (1983), "we give respectful consideration to such lower Federal court decisions as seem persuasive." *Commonwealth* v. *Hill*, 377 Mass. 59, 61 (1979), quoting *Commonwealth* v. *Masskow*, 362 Mass. 662, 667 (1972).

superfluous, as the FCIC's own immunity from taxation was already stated unambiguously in the first sentence of § 1511, which dates back to the establishment of the FCIC in 1938. There would be no reason to amend § 1511 in 1994 merely to restate an immunity that was already provided. Rather, in context, it is clear that the 1994 amendment to § 1511 was an affirmation of the *Todd* decision, intended to specify that the immunity from State taxation extended to contracts reinsured by the FCIC, and not just to the contracts issued by the FCIC itself.

The commissioner also argues that the premium excise tax imposed by G. L. c. 63, § 23, is not a tax "on" any contract reinsured by the FCIC that would be prohibited by 7 U.S.C. § 1511, or a tax "on" any premium for such an insurance contract that would be prohibited by 7 C.F.R. § 400.352(b)(2), but rather an excise tax for the privilege of doing business in Massachusetts that is merely "measured by" reference to the premiums for such contracts. The actual wording of G. L. c. 63, § 23, does not support the commissioner's theory, as it requires foreign insurance companies to "pay an excise upon the gross premiums for all policies written or renewed." More importantly, the preemption of State taxation set forth in 7 U.S.C. § 1511 is not parsed in the technical manner proposed by the commissioner. That section provides that the entire "contract" (including any insurance contract reinsured by the FCIC) "shall be exempt from taxation imposed by any State, municipality, or local taxing authority." 7 U.S.C. § 1511. By exempting FCIC-reinsured contracts "from taxation," Congress intended to prohibit *any* form of taxation of such contracts. Nor does the FCIC's preemption regulation hinge on the technical distinction suggested by the commissioner. Rather, it provides that States may not "[t]ax premiums associated with policies issued" under the Act, 7 C.F.R. § 400.352(b)(2), and preempts State laws (including tax laws) "that directly or indirectly affect" policies reinsured by the FCIC, 7 C.F.R. § 400.352(a). The "contracts" and "premiums" are thus "exempt" from any form of taxation (or any State law that even "indirectly affect[s]" them), whether

the tax is one "on" such premiums or contracts or an excise tax derived from or measured by such premiums or contracts.[9]

The commissioner's suggested distinction, if adopted, would eviscerate the preemption provisions and render them useless. The pragmatic purpose behind preventing taxation on the reinsured contracts was to avoid having the FCIC effectively pay State and local taxes that were being passed through to it as an expense under its reinsurance program. "Congress did not intend for the federal crop insurance program to be subject to state premium taxes that reduce the savings anticipated by Congress, that siphon away federal funds from their intended use, and that create an operating cost which would have not existed if the FCIC had issued the policy." *State ex rel. Todd* v. *United States*, 791 F. Supp. 1491, 1497 (D. Kan. 1992). The preemption provisions were not aimed at preventing only some particular type of tax, but were intended to preclude all forms of taxation affecting the reinsured contracts, as all such taxes, however denominated, would effectively be paid by the FCIC. The commissioner's argument that the tax imposed by G. L. c. 63, § 23, is somehow not the kind of tax that is preempted

[9]The commissioner relies on *American Bank & Trust Co.* v. *Dallas County*, 463 U.S. 855, 858 (1983) (*American Bank*), quoting *Society for Sav.* v. *Bowers*, 349 U.S. 143, 148 (1955), in support of his proposed distinction between a tax "on" premiums paid under FCIC-reinsured policies and an excise tax "measured by" such premiums, claiming that that distinction is "firmly embedded in the law." In *American Bank, supra* at 859-861, 873, the United States Supreme Court held that former 31 U.S.C. § 742 (currently codified at 31 U.S.C. § 3124[a] [1994]), preempted a Texas bank shares tax that was measured, in part, by the value of tax-exempt Federal obligations held by the banks. The Court acknowledged that its prior precedent had distinguished between taxes imposed "on" Federal obligations and taxes on discrete property interests, such as corporate shares or business franchises, that were "measured by" the underlying assets. *Id.* at 858, 862. However, the Court noted that Congress's 1959 amendment to § 742 had done away with this "formal but economically meaningless" distinction. *Id.* at 858. "The 1959 amendment rejected and set aside this Court's rather formalistic pre-1959 approach to [§ 742]." *Id.* at 862. Thus, while the distinction that the commissioner now proposes was "firmly imbedded in the law" over forty years ago, *id.* at 858, quoting *Society for Sav.* v. *Bowers, supra,* it is a distinction that was rejected by Congress in 1959 and demeaned by the Court as "formalistic" and "meaningless" in 1983. *Id.* at 858, 862. There is no reason to believe that, in amending 7 U.S.C. § 1511, in 1994, Congress intended to resurrect that defunct distinction.

by these provisions is contrary to the very purpose of those broadly worded preemption provisions.

5. *Conclusion.* The case is remanded to the single justice for entry of a judgment declaring that the Act preempts any tax imposed by G. L. c. 63, § 23, on premiums from crop insurance policies that are reinsured by the FCIC.

*So ordered.*